339 F.2d 792
 Leopold S. TOPOR-TAPAREK and Michelle Topor-Taparek, Leopold
S. Topor-Taparek, individually, Michelle
Topor-Taparek, individually, Plaintiffs-Appellants,
v.
SOCONY MOBIL OIL COMPANY, Inc., Defendant-Appellee.
 No. 31, Docket 27828.
 United States Court of Appeals Second Circuit.
 Argued Nov. 9, 1964.
Decided Dec. 29, 1964.
 
 Jacob Rassner, New York City, for plaintiffs-appellants.
 Herbert C. Smyth, New York City, for defendant-appellee.
 Before SWAN, WATERMAN and MOORE, Circuit Judges.
 SWAN, Circuit Judge.
 
 
 1
 This is an action to recover damages for personal injuries alleged to have been sustained by plaintiffs and for the loss of their sailboat, a 23-foot ketch named Polonaise which was sunk by defendant's tanker S. S. Shabonee, near the Florida Keys about two miles off Pelican Shoals Light, on the night of February 22, 1956. Federal jurisdiction rests on diverse citizenship, the plaintiffs being citizens of Florida and the defendant a New York corporation. The claims for personal injuries were tried to a jury which returned a verdict for the defendant. The claim for loss of the sailboat was tried to the court, Cooper, Judge, sitting on the admiralty side. He also found for the defendant.
 
 
 2
 From the judgment dismissing their complaint the plaintiffs have appealed. They also appeal from denial of their motion n.o.v. or for a new trial, and the two appeals have been consolidated for argument.
 
 
 3
 Many of the facts concerning the accident are undisputed. It happened about 10:15 P.M. on February 22, 1956. In an overtaking situation defendant's 10,000 ton tanker overtook, hit and sank plaintiffs' sailboat. The plaintiffs were the only persons aboard the sailboat and when it was hit they were both below deck in the cabin. They were thrown into the water and were rescued with some difficulty and after some delay by a boat put out by the defendant. Both the sailboat and the tanker were proceeding in a southwesterly direction in much travelled waters governed by the International Rules of Navigation. The tanker was making about 16 knots, ground speed, and the sailboat was maintaining steerage way but making practically no progress over the ground. The weather conditions were such that the tanker's lights could be seen five miles away.
 
 
 4
 At the trial there was no dispute as to the facts above stated but there was much dispute as to whether the tanker was negligent in not having seen the ketch, and whether the latter carried the lights required by Rules 10 and 29, 33 U.S.C.A. 145h and 147a.
 
 
 5
 Appellants contend that Judge Cooper erred in denying their motion for a directed verdict, and that the verdict is against the weight of the applicable evidence. Obviously the principal issue presented to the jury was which group of witnesses to believe. It is equally obvious that the jury believed the appellee's witnesses and did not credit the appellants' testimony. This was doubtless largely due to the fact that their testimony at the trial ending June 4, 1962, differed from what they had stated under oath at the Coast Guard investigation held on March 7, 1956. The rule is too well established to need the citation of authorities that questions of credibility are to be determined by the trier of the facts, i.e. the jury, when there is one.
 
 
 6
 The appellants also claim that rulings on requests to charge constitute reversible error. The charge of the court is too long to be set out in full. It covers 27 pages. We have carefully examined the charge and think it presented correctly and adequately the issues the jury was to decide. The jury was told that 'the defendant was required under the law to exercise reasonable care to observe and to avoid collision with other vessels.' Record, 700; that 'the law provides in general that the plaintiffs, in order to succeed in this case, have the burden of proving (1) that the defendant was negligent, and (2) that such negligence was the proximate cause of the collision and resultant injuries.' Record, 701; that negligence means the failure to use ordinary and reasonable care under the existing circumstances, and proximate cause means that there must be a direct causal relationship between the alleged negligent conduct and the resultant accident and injuries. Record, 702. At Record, 703 the court discussed what is meant by burden of proof. Record, 704 stated the undisputed facts that defendant's lookout did not see the Polonaise and that at the time of collision both plaintiffs were below deck, had no lookout and did not observe the lights on defendant's tanker. Record, 705 stated that the jury must determine not merely whether defendant's lookout did or did not see plaintiffs' vessel but whether he should have seen it. At Record, 707 the court discussed the meaning and effect of the various rules of navigation which are relevant. He said that in general the overtaking vessel, such as defendant's tanker, must keep clear of the overtaken vessel and give the latter the right of way, but explained that such duty would only come into play 'if you first find that the Polonaise was so visible as to enable the Shabonee to keep her in sight and to continue to check her position,' and that the violation of such duties would constitute negligence.
 
 
 7
 At 710 the court explained that since plaintiff clearly violated a rule of navigation by having no stern light or the alternative lookout with available lantern, plaintiffs have the burden of proof that such violation did not and could not have been a proximate cause of the collision. This is well established law. It will suffice to cite The Pennsylvania, 19 Wall. 125, 136, 86 U.S. 125, 22 L.Ed. 148.
 
 
 8
 At 712 the issues were summed up by telling the jury that if it found the defendant not negligent, or if the collision was caused solely by the fault or negligence of plaintiffs, its verdict should be for the defendant. But if defendant was negligent and 'such negligence together with the negligence of the plaintiff Leopold was a proximate cause of the collision and resultant injuries, then the jury must decrease the amount which he may recover by a percentage which would represent the extent to which he was to blame.'
 
 
 9
 As already stated, we hold that the charge was fair and adequate and without error.
 
 
 10
 Finally it is claimed in reliance on Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720, decided June 10, 1962, that the failure to submit to the jury the issue decided by the court on the admiralty side, namely, the value of the lost ketch, was an error requiring reversal of the judgment. We do not interpret the Fitzgerald case as applicable to the case at bar. No reason has been suggested why a plaintiff may not voluntarily waive submission of an admiralty issue to the jury. This is what the appellants here did. Counsel for defendant suggested that the question of hull damage must be decided by the court and is not to be submitted to the jury. Mr. Rassner replied: 'I think we ought to have a stipulation on that.' The Court: 'Well, suppose you contemplate about that and see if you can't get together on it. I will leave it to you.' Mr. Rassner said: 'Yes, we are practically together but, your Honor, we should have it as part of the record * * *; and I think we ought to stipulate that the question of damage to the hull and loss of the vessel, if any, suffered by the plaintiffs, such questions are to be submitted to the Court to determine the factual and legal questions.' The court asked Mr. Smyth if the stipulation was satisfactory to him and he replied: 'I was just reviewing it.' The court's final statement reads: 'Before you offer it, why don't you give Mr. Smyth a chance to look it over, as he may have a couple of corrections before he accepts it as a binding stipulation.'
 
 
 11
 'When the stipulation is then satisfactory to both sides, we can then have it made part of the record.' Mr. Rassner replied: 'Yes, that is satisfactory.'
 
 
 12
 The record does not disclose what, if any, modification of the stipulation was suggested by Mr. Smyth, nor that he formally notified the court that he was satisfied with the stipulation as dictated by Mr. Rassner. But the colloquy between court and counsel (pages 4-5, appellants' appendix) when Mr. Rassner produced an expert witness to testify as to the valuation of sailboats such as the Polonaise, convinces us that the stipulation was accepted by both counsel.
 
 
 13
 Judgment affirmed.